UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
**ONANEY POLANCO**, as Parent and Natural
Guardian of **A.D.**, and **ONANEY POLANCO**
Individually,

                               Plaintiffs,

      -against-

**MEISHA PORTER**, in her Official Capacity
as the Chancellor of New York City
Department of Education, and the **NEW YORK
CITY DEPARTMENT OF EDUCATION**,

                        Defendants.
-----------------------------------------------------------X

**COMPLAINT**

21-cv-10176

       Plaintiffs ONANEY POLANCO, as Parent and Natural Guardian of A.D.,[1] and ONANEY

POLANCO, Individually, for her Complaint, alleges as follows:

## PRELIMINARY STATEMENT

1.     The Individuals with Disabilities Education Act ("IDEA") offers federal funds to States in

      exchange for a commitment to furnish a "free appropriate public education" (FAPE) to all

      children with physical and/or intellectual disabilities. See 20 U.S.C. § 1400(3)(A)(i) (listing

      covered disabilities).

2.     As defined in the Act, a FAPE comprises special education and related services—instruction

      tailored to meet a child's unique needs and supportive services sufficient to permit a child

      to benefit from the instruction. 20 U.S.C. § 1401 (26) and (29).

3.     An eligible child acquires a substantive right to such an education once a State accepts

      the IDEA's financial assistance from the Federal Government.

---

[1] Although the full name of the Parent is used in the Complaint herein, pursuant to the Family Educational Rights and Privacy Act ("FERPA"), 20 U.S.C. § 1232(g) (and 34 C.F.R. Part 99), Plaintiffs use the initials of the Student to protect the Student's privacy.

4. Under the IDEA, an Individualized Education Program ("IEP") serves as the primary vehicle for providing a child with the promised FAPE.

5. Plaintiffs seek de novo review of Decision No. 21-143 issued by State Review Officer ("SRO") Carol H. Hague on July 30, 2021.

6. Plaintiffs seek an Order reversing the SRO's finding that A.D. was not denied a FAPE for the 2020-2021 extended school year.

7. Plaintiffs seek an Order from this Court reversing SRO Hague's Decision that reversed the Findings of Fact and Decision ("FOFD") of Impartial Hearing Officer ("IHO") Virginia Tillyard dated May 22, 2021, which found the Defendants failed to offer A.D. a FAPE for the 2020-2021 extended school year.

8. Plaintiffs are aggrieved parties due to SRO Hague's adverse findings and rulings in SRO Decision No. 21-143.

9. Plaintiff ONANEY POLANCO is the Parent of a disabled child, A.D., who was denied access to a FAPE during the 2020-2021 school year by Defendants MEISHA PORTER and the NEW YORK CITY DEPARTMENT OF EDUCATION (collectively "DOE").

10. This Complaint is filed under IDEA, *supra,* New York State's implementing laws and regulations, 8 N.Y.C.R.R. § 200 *et seq.,* and Article 89 of the New York Education Law, N.Y. Educ. Law § 4401 (McKinney) *et seq.,* and applicable case law and public policy.

## JURISDICTION AND VENUE

11. The instant case arises under a federal statute, the Individuals with Disabilities Education Act, 20 U.S.C. § 1400, *et seq.,* and the United States Department of Education regulations promulgated under authority granted by statute. 34 C.F.R. Part 300.

12. Jurisdiction of the United States District Court for the Southern District of New York is

invoked under 20 U.S.C. § 1415(i)(2), which provides "Any party aggrieved by the findings and decision made under subsection (f) or (k) of § 1415 who does not have the right to an appeal under subsection (g), and any party aggrieved by the findings and decision made under this subsection, shall have the right to bring a civil action with respect to the complaint presented pursuant to this section, which action may be brought in any State court of competent jurisdiction or in a district court of the United States, without regard to the amount in controversy."

13. Jurisdiction is also conferred by 28 U.S.C. § 1331, providing for jurisdiction of all civil actions arising under the laws of the United States.

14. This Court may order declaratory and injunctive relief under 28 U.S.C. § 2201 and 2202.

15. The Court also has pendent jurisdiction to adjudicate any state claims arising from the same facts as the federal claims asserted herein under 28 U.S.C. § 1367.

16. Venue is proper in the United States District Court for the Southern District of New York, as authorized by 29 U.S.C. § 1391.

**THE PARTIES**

17. Plaintiff A.D. was nine years old at the commencement of the 2020-2021 extended school year.

18. Plaintiff A.D. is a minor.

19. A.D. is a child with a disability, as defined by 20 U.S.C. § 1401(3).

20. A.D. is entitled to receive a FAPE and related services from Defendant DOE.

21. Plaintiff ONANEY POLANCO is the Parent and Natural Guardian of A.D.

22. At all relevant times herein, Plaintiffs were residents of the City of New York.

23. A.D. is not expressly named within this Complaint because of privacy provisions in the

IDEA and the Family Education Rights Privacy Act ("FERPA"). 20 U.S.C. § 1232.

24. Defendant New York City Department of Education is and was at all material times, a corporate body created under Article 52 of the New York State Education Law, CLS Educ. Law§ 2550 *et seq.* that manages and controls the educational affairs of the New York City Public Schools.

25. Defendant New York City Department of Education is the local educational authority ("LEA") defined by 20 U.S.C. § 1401 and 34 C.F.R. § 300.28, responsible for providing A.D. with a FAPE.

26. New York State and DOE have established policies and procedures, both written and informal, concerning the IDEA's implementation.

27. DOE receives federal funding under the IDEA. 20 U.S.C. § 1412.

28. Because DOE receives federal funding under the IDEA, it must comply with the statute's provisions. 20 U.S.C. § 1412.

29. Defendants' principal place of business is located at 52 Chambers Street, in the County and State of New York.

30. The New York City Department of Education's Impartial Hearing Order Implementation Unit is located at 65 Court Street, Room 1503, Brooklyn, New York 11201.

31. Plaintiffs reside in Defendants' school district.

32. DOE is responsible for providing a FAPE to all students with disabilities, including A.D., who reside in Defendants' school district under statutory rights arising under IDEA, its implementing regulations, and the applicable Part 200 Regulations implemented by New York State, to the extent such regulations are not inconsistent with the IDEA.

## FACTUAL ALLEGATIONS

33. Plaintiffs bring this action under the IDEA to recover the costs of A.D.'s placement at the International Institute for the Brain ("iBRAIN") for the 2020-2021 extended school year.

34. Congress enacted the IDEA to ensure that all students with disabilities, like A.D., have meaningful access to public education.

35. States who participate in the IDEA receive substantial federal funds in exchange for their agreement to provide a FAPE to all disabled children in the state and to comply with IDEA's procedural and substantive mandates.

36. New York State has chosen to participate in the IDEA framework and has established procedures for providing special education services to children with disabilities, as outlined in N.Y. Educ. Law § 4401 *et seq.*

37. Upon information and belief, the New York City Department of Education receives money under IDEA Part B based on the "child count" method, which allows the LEA to claim a specific amount of money per Student with a qualifying disability.

38. Upon information and belief, DOE has received IDEA Part B funds earmarked for A.D.'s education relative to the 2020-2021 extended school year.

39. DOE has not funded A.D.'s education at iBRAIN for the 2020-2021 extended school year.

40. The primary mechanism for ensuring implementation of the IDEA's mandate of a FAPE is the IEP, as defined by 20 U.S.C. § 1401 (14), §1414(d).

41. An IEP is a written statement prepared by the LEA for every child with a disability, which sets forth the special education and related services, supplementary aids and

services, and program modifications or supports to be provided to the child, or on behalf of the child, to enable that child to achieve a comprehensive set of annual goals and short-term objectives.

42. A.D. suffers from a brain injury.

43. A.D. has been diagnosed with Pelizaeus-Merzbacher disease, a brain-based disorder.

44. As a result of A.D.'s brain injury, A.D. has global developmental impairments that adversely affect his educational abilities and performance.

45. During the 2020-2021 extended school year, A.D.'s disability classification under the IDEA was traumatic brain injury ("TBI").

46. A.D. is nonverbal and non-ambulatory, has highly intensive management needs, and requires a high degree of individualized attention and instruction.

47. A.D. requires special education and related services to accommodate his disabilities so that he can receive a FAPE.

48. A.D. is minimally verbal and communicates with his voice through facial expressions, body language, gestures, picture symbol cards, and switches. He is fully dependent on a G-tube for feeding and has a minor vision impairment (nystagmus).

49. A.D. has a risk of aspiration and needs a 1:1 paraprofessional to observe aspiration precaution at all times.

50. A.D. uses a wheelchair and requires two-person transfers for all mobility. He wears a diaper and needs help with toileting.

51. A.D. receives home health aide services after school for 5 hours weekly. His grandmother serves as his home attendant.

52. A.D. is dependent on 1:1 assistance for activities of daily living ("ADL").

53.   iBRAIN employs specialized teachers, nurses, and therapists to provide extended school day and extended school year care and education to children with brain injuries.

54.   During the 2020-2021 extended school year, A.D. attended iBRAIN and received individualized instruction for his academic and related services.

55.   During the 2020-2021 extended school year, A.D. was placed in a 6:1:1 class and received a 1:1 paraprofessional and related services for an extended school day.

56.   On May 26, 2020, the local Committee on Special Education ("CSE") met telephonically and recommended A.D. attend a District 75 Specialized Public School in a 6:1:1 class ratio. However, Plaintiffs' investigation revealed that the recommended program was not available for the 2020-2021 extended school year.

57.   On June 26, 2020, Plaintiffs sent a Ten-Day Notice to DOE, advising of their intention to enroll A.D. at iBRAIN for the 2020-2021 extended school year, and seek public funding for the placement because DOE failed to recommend a program that could meet A.D.'s extensive needs.

58.   A.D. attended iBRAIN for the 2019-2020 extended school year.

59.   Plaintiffs re-enrolled A.D. at iBRAIN for the 2020-2021 extended school year.

60.   The tuition at iBRAIN for the 2020-2021 extended school year was reasonable relative to A.D.'s services.

61.   The educational program at iBRAIN for the 2020-2021 school year was individually tailored to A.D.'s particular needs.

62.   On or about July 10, 2020, Plaintiffs initiated an administrative Due Process Proceeding against DOE to secure funding for iBRAIN tuition and other relief under the IDEA. 20 U.S.C. § 1415(f) and N.Y. Comp. Codes R. & Regs. tit. 8, § 200.5(i).

63.  In their Due Process Complaint ("DPC"), dated July 6, 2020, Plaintiffs alleged, *inter alia,* that DOE denied A.D. a FAPE for the 2020-2021 extended school year as required by the IDEA by not providing A.D. an appropriate program and placement for the 2020-2021 school year; that iBRAIN was an appropriate unliteral placement for A.D. for the 2020-2021 school year, and that equities favored Plaintiffs' request for tuition reimbursement/direct payment for A.D.'s placement at iBRAIN. 20 U.S.C. § 1415(i) *et seq.;* N.Y. Comp. Codes R. & Regs. tit. 8, § 200.5(i).[2]

64.  The DPC was assigned IHO Case No. 196382.

65.  On January 11, 2021, IHO Virginia Tillyard was assigned IHO Case No. 196382.

66.  On January 19, 2021, IHO Tillyard commenced the impartial hearing relative to IHO Case No. 196382.

67.  The hearing was continued on January 27, 2021; February 10, 18, 23, and 25, 2021; March 3, 10, and 19, 2021.

68.  The record in IHO Case No. 196382 closed on May 22, 2021.

69.  On May 22, 2021, IHO Tillyard issued a Findings of Fact and Decision ("FOFD") in IHO Case No. 196382, which found that DOE denied A.D. a FAPE for the 2020-2021 extended school year, that iBRAIN was an appropriate unilateral placement for the 2020-2021 extended school year, and that equities favored the Plaintiffs' request for direct retrospective and prospective tuition reimbursement for the 2020-2021 extended school year including the cost of transportation. **A copy of IHO Tillyard's May 22,**

---

[2] A board of education may be required to reimburse parents for their expenditures for private educational services obtained for a student, if the services offered by the board of education were inadequate or inappropriate ("Prong I"); the services selected by the parents were appropriate ("Prong II"); and equitable considerations support the parents' claim. ("Prong III"); *See Florence Cty. Sch. Dist. Four v. Carter By & Through Carter*, 510 U.S. 7, 114 S. Ct. 361, 126 L. Ed. 2d 284 (1993); *Sch. Comm. of Town of Burlington, Mass. v. Dep't of Educ. of Mass.*, 471 U.S. 359, 369–70, 105 S. Ct. 1996, 85 L. Ed. 2d 385 (1985).

**2021, FOFD is attached hereto as Exhibit 1.**

70. Defendants appealed IHO Tillyard's FOFD by filing a Request for Review ("RFR") to the New York State Education Department's Office of State Review; Plaintiffs cross-appealed IHO Tillyard's FOFD to the extent that IHO Tillyard did not address specific issues.

71. On July 30, 2021, SRO Hauge issued SRO Decision No. 21-143, finding DOE did not deny A.D. a FAPE for the 2020-2021 extended school year and reversing IHO Tillyard's FOFD in IHO Case No. 196382. **A copy of SRO Hauge's Decision No. 21-143 is attached hereto as Exhibit 2.**

72. SRO Hague improperly reversed IHO Tillyard's FOFD in IHO Case No. 196382.

73. SRO Hauge did not address IHO Tillyard's finding that iBRAIN was an appropriate unilateral placement.

74. SRO Hauge did not address IHO Tillyard's finding that equities favored Plaintiffs' request for tuition reimbursement.

75. IHO Tillyard correctly found that Plaintiffs alleged in their DPC that DOE failed to implement A.D.'s May 2020 IEP by "not offering a seat . . . in a classroom that could implement the IEP", and that "investigation by the Parent revealed the recommended program is not available for the extended school year 2020-21" because it recommended, "a placement that does not provide the mandated program."

76. IHO Tillyard found that while Plaintiff did not substantiate or detail in the record what she meant by the preceding allegations, one of the arguments in Plaintiffs' closing brief, in the administrative hearing, concerned wheelchair accessibility.

77. A.D.'s May 2020 IEP indicates that Student uses a wheelchair and needs an accessible

school building.

78. The hearing record demonstrates that DOE's Placement Program building was only wheelchair accessible at the entrances, and not throughout.

79. DOE's recommended placement could not meet A.D.'s needs as outlined in the May 2020 IEP.

80. IHO Tillyard correctly found that since the IEP is the document evidencing what the CSE considers to be a FAPE, and the Placement Program offered by the CSE could not meet A.D.'s needs as described in the May 2020 IEP, the proposed placement was inappropriate.

81. IHO Tillyard correctly found that DOE's recommended placement could not meet A.D.'s needs as set out by the May 2020 IEP, to wit: the recommended placement was not completely wheelchair accessible.

82. IHO Tillyard correctly found that offering A.D. an IEP in a building that he could not completely and totally access was a substantive denial of FAPE and DOE did not meet its burden of proving it offered A.D. a FAPE for the 2020-2021 school year.

83. DOE did not meet its burden of proving it offered A.D. a FAPE for the 2020-2021 school year.

84. DOE did not provide A.D. a FAPE for the 2020-2021 school year.

85. DOE's recommended placement was not wheelchair accessible.

86. A.D. is confined to a wheelchair.

87. A.D. cannot attend a program that he cannot physically attend – that he cannot physically access and maneuver.

88. According to the U.S. Supreme Court, a school district has offered a student a FAPE when (a) the board of education complies with the procedural requirements outlined in the IDEA,

and (b) the IEP is developed through the IDEA's procedures and is reasonably calculated to enable the Student to receive educational benefits. *Rowley, supra.*

89. To meet its substantive FAPE obligations, a school district must offer a student an IEP that is "reasonably calculated to enable a child to make progress appropriate in light of the child's circumstances" *Endrew F. ex rel. Joseph F. v. Douglas Cty. Sch. Dist. RE-1*, 137 S. Ct. 988, 197 L. Ed. 2d 335 (2017).

90. In *Endrew F.,* the Supreme Court stated that "a contemplated IEP must be focused on the particular child that is at the core of the IDEA.

91. In *Endrew F.,* the Supreme Court held that the IDEA "requires an educational program reasonably calculated to enable a child to make progress appropriate in light of the child's circumstances."

92. A program that a student cannot attend is not calculated to enable a child to make progress appropriate in light of the child's circumstance.

93. The program DOE proposed in May 2020 was not calculated to enable A.D. to make progress appropriate in light of A.D. circumstances.

94. Under New York precedent, the IDEA is satisfied if the school district "provides an IEP that is likely to produce progress, not regression," and "if the IEP affords the student with an opportunity greater than mere 'trivial advancement'." *Mr. P. & Mrs. P., supra* (internal citations omitted).

95. A program that a student cannot attend is not likely to produce progress, not regression, and does not afford a student an opportunity greater than mere trivial advancement.

96. The program DOE proposed in May 2020 was not likely to produce progress for A.D.

97. The program DOE proposed in May 2020 was likely to cause A.D. to regress.

98.   The program DOE proposed in May 2020 would not have afforded A.D. with an opportunity for an education or educational advancement.

99.   The program placement DOE proposed in May 2020 was not a placement at all as it was not available to A.D. because it was not wheelchair accessible.

100.  IHO Tillyard correctly found A.D.'s placement at iBRAIN for the 2020-2021 school year was specifically designed to meet A.D.'s unique special education needs, supported by such services as were necessary to permit him to benefit from instruction.

101.  IHO Tillyard correctly found Plaintiffs met their burden in step two of the Burlington/Carter criteria for tuition reimbursement.

102.  Equitable considerations are relevant in determining relief "because the authority to grant reimbursement [under the IDEA] is discretionary." *Frank G. v. Bd. of Educ. of Hyde Park*, 459 F.3d 356, 363–64 (2d Cir. 2006) (quoting *School Committee of Town of Burlington, Mass.*, 471 U.S. at 374).

103.  Determination of whether or not equitable factors support a Parent's claim for tuition reimbursement hinges, in large part, on whether or not the parent cooperated with the CSE.

104.  IHO Tillyard found that testimony and documentary evidence raised questions about the extent of the Parent/Plaintiffs' cooperation with the CSE.

105.  IHO Tillyard correctly found that DOE had the burden of proof as to the equities by statute.

106.  IHO Tillyard found that it was impossible to fully determine the effect of Parent/Plaintiffs' lack of cooperation on the satisfactory development of the May 2020 IEP.

107.  IHO Tillyard found that while it would have weighed in Plaintiff's favor if she had appeared as a witness and offered explanations or counter testimony regarding the extent of her cooperation with the CSE and her objections to the Placement Program, on balance,

equitable considerations supported Plaintiffs' claim for payment of Student's expenses for the 2020-21 school year.

108. While IHO Tillyard found that some reduction in tuition might have been appropriate, she correctly found that she lacked a basis for determining how much might be reasonable either concerning costs or with respect to Parent's non-cooperation.

109. IHO Tillyard correctly found that Plaintiffs met the third of the three Burlington/Carter criteria for tuition reimbursement.

110. IHO Tillyard correctly found that direct retrospective and/or prospective tuition payment to the Private School was appropriate following *Burlington, D.A. v. New York City Dept. of Educ.* and *Connors v. Mills.*

111. IHO Tillyard correctly found that A.D. was entitled to the cost of specialized transportation mandated by the May 2020 IEP and correctly awarded Plaintiffs transportation costs pursuant to the transportation contract received in evidence at the administrative hearing.

112. IHO Tillyard did not exceed her jurisdiction by finding, sua sponte, that the district denied A.D. a FAPE for the 2020-2021 school year based on wheelchair accessibility – or rather, based on the fact that the program placement was inaccessible to A.D. as it was not wheelchair accessible.

113. In Decision No. 21-143, SRO Hague noted that Plaintiffs' DPC raised claims, *inter alia*, regarding DOE's ability to implement the May 2020 IEP, asserting that DOE did not offer a seat to A.D. in a classroom that could implement the IEP at the start of the extended school year, and Plaintiffs' investigation revealed the recommended program was not available for the 2020-21 extended school year.

114. In SRO Decision No. 21-143, SRO Hauge made numerous erroneous findings.

115. SRO Hague erred in finding that Parent/Plaintiffs' argument as to res judicata was infirm.

116. DOE should have been barred from defending the May 2020 IEP under the doctrine of res judicata, because in a separate proceeding, the parent asserted a denial of FAPE for the 2019-20 school year, and the May 2020 IEP was intended to be implemented for a portion of the 2019-20 school year.

117. SRO Hague erroneously found that IHO Tillyard erred by finding that DOE denied A.D. a FAPE based on a ground not alleged by Plaintiffs in their DPC – namely that DOE's assigned school was not wheelchair accessible.

118. SRO Hague erroneously found Parent/Plaintiffs' DPC raised only general challenges relative to DOE's inability to implement the May 2020 IEP and, accordingly, did not raise any prospective, non-speculative challenges to the district's capacity to implement the May 2020 IEP at the assigned school site.

119. SRO Hague erroneously found that DOE's burden to present testimony about the capacity of its proposed assigned school site to implement every aspect of the May 2020 IEP was never triggered.

120.  SRO Hague's preceding analysis is misplaced and erroneous.

121. SRO Hague erroneously found that because the issue of wheelchair accessibility was not adequately raised within Plaintiffs' DPC, the issue was beyond the scope of the impartial hearing and the impartial hearing officer.

122. Plaintiffs were not required to raise the issue of "impossibility" in their DPC.

123. In the first instance, any proposed program or placement must actually exist before it can be considered an appropriate program or placement.

124. A proposed educational program and placement that does not exist is simply not a proposed

educational program and placement.

125. SRO Hague recognized that the Second Circuit has held that issues not included in a DPC may be ruled on by an administrative hearing officer when the district "opens the door" to such issues with the purpose of defeating a claim that was raised in the DPC.

126. SRO Hague recognized that under certain circumstances, issues not raised in a DPC may be ruled on by an IHO.

127. SRO Hague found that in the instant case, the subject of wheelchair accessibility was first addressed during the impartial hearing as part of the parent's attorney's cross-examination of the district witness.

128. SRO Hague found that Parent/Plaintiffs' counsel, on cross-examination, first broached the issue of accessibility with one question:  "And with respect to the structure, the building itself, could you tell us whether or not that building is handicapped accessible?"— to which the district's witness answered: "To my knowledge, it is not an accessible building besides the entrances."

129. SRO Hague found that the preceding question and answer were the sum and total of the inquiry of the issue of accessibility.

130. SRO Hague erred in finding that given the one-question line of inquiry by Parent/Plaintiffs' counsel during a nine-day impartial hearing, finding a denial of FAPE based on this issue is nothing short of the proverbial "sandbag" courts counsel against.

131. As a verb, the term "sandbag" is defined broadly to mean to misrepresent or conceal one's true intent, position, or potential in order to take advantage of an opponent. Stacey A. Shadden, Stacey A. Shadden, *How to Sandbag Your Opponent in the Unsuspecting World of High Stakes Acquisitions*, 47 Creighton L. Rev. 459 (2014).

132. The phrase "sandbag" evokes an inference of wrongful intent and malfeasance.

133. Parent/Plaintiffs' failure to raise in their DPC that the May 2020 IEP program placement was not accessible by wheelchair was not done intentionally or to take advantage of DOE.

134. On the contrary, DOE's offer of an educational program placement that was not accessible by wheelchair, for a student confined to a wheelchair, was a false, fraudulent, infirm, and/or otherwise dishonest offer.

135. DOE was, at all times, better positioned than Parent/Plaintiff to know that its recommended program placement was not wheelchair accessible.

136. Indeed, through testimony on cross-examination, DOE's employee advised Plaintiffs and the IHO that the proposed program placement was not wheelchair accessible.

137. Plaintiffs could not have "sandbagged" DOE with information that was within DOE's exclusive possession.

138. DOE's duty of candor towards a tribunal required it to advise the IHO that the May 2020 program placement was not wheelchair accessible, and therefore never available to A.D.

139. It was legally impossible for DOE to prove it provided A.D. a free appropriate public education for the 2020-2021 school year where the program placement was not wheelchair accessible, and therefore never available to A.D.

140. It is legally impossible for DOE to have provided A.D. a free appropriate public education for the 2020-2021 school year where the program placement was not wheelchair accessible, and therefore never available to A.D.

141. An educational program that A.D. could not physically attend/access was a denial of A.D.'s right to a FAPE.

142. By requiring school districts to put their efforts into creating adequate IEPs at the outset,

IDEA prevents a school district from effecting a "bait and switch," even if the baiting is done unintentionally. *R.E. v. New York City Dep't of Educ.*, 694 F.3d 167, 186 (2d Cir. 2012).

143. A school district cannot rehabilitate a deficient IEP after the fact. *Id.*

144. A court should determine the appropriateness of an IEP as of the time it was made. *Id.*

145. In determining the adequacy of an IEP, both parties are limited to discussing **the placement and services specified** in the written plan and therefore reasonably known to the parties at the time of the placement decision. *Id.*; *See Fuhrmann on Behalf of Fuhrmann v. E. Hanover Bd. of Educ.*, 993 F.2d 1031, 1039–40 (3d Cir. 1993) ("*Rowley* requires, at the time the initial evaluation is undertaken, an IEP need only be '*reasonably calculated* to enable the child to receive educational benefits.' . . . [T]he measure and adequacy of the IEP can only be determined as of the time it is offered to the student, not at some later date." (quoting *Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist., Westchester Cty. v. Rowley*, 458 U.S. 176, 206–07, 102 S. Ct. 3034, 73 L. Ed. 2d 690 (1982)).

146. The May 2020 IEP program placement was void ab-initio.

147. SRO Hague erred in finding that the disability category DOE used to find A.D. eligible for special education under IDEA, was not a reason for finding a denial of FAPE.

148. A.D.'s qualifying disability under the IDEA is a traumatic brain injury.

149. DOE wrongfully classified A.D. as a Student with multiple disabilities.

150. SRO Hague found that in assessing A.D.'s complex needs, A.D. may qualify for classification as a student with a traumatic brain injury.

151. SRO Hague erroneously found that the hearing record demonstrates that the CSE's May 2020 decision to classify A.D. as a student with multiple disabilities was not unreasonable.

152. The hearing record demonstrates that the CSE's May 2020 decision to classify A.D. as a

student with multiple disabilities was unreasonable.

153. The CSE's May 2020 decision to classify A.D. as a student with multiple disabilities was unreasonable.

154. SRO Hague erred in finding that Plaintiffs' challenge to the assigned school's ability to functionally group A.D. in accordance with New York State Department of Education regulations is without merit.

155. The May 2020 IEP program placement should have included an extended school day in A.D.'s program.

156. SRO Hague erred in finding that the CSE was not required to provide and/or consider an extended school day as part of A.D.'s program.

157. SRO Hague erred in finding that DOE was not required to demonstrate that the assigned school could implement an extended school day.

158. SRO Hague found that Plaintiffs' allegations that A.D.'s proposed/assigned school did not have nurses trained in G-tube feeding did not have staff trained in two-person transfers of A.D. to and from his wheelchair and that a recommended assistive technology device was not available at the assigned school were related to services or needs identified in the May 2020 IEP, and, as such, were permissible challenges to the assigned school.

159. SRO Hague erroneously found that Plaintiffs' request for a finding that the assigned school could not implement A.D.'s recommended nursing services was entirely speculative.

160. SRO Hague erred in finding Plaintiffs' argument regarding the lack of and/or inadequate staff training for two-person transfers of A.D. to and from his wheelchair was impermissibly speculative.

161. For the May 2020 IEP to be a proper proposal/placement, DOE would have been required

to meet A.D.'s needs by having staff trained in G-tube feeding and two-person transfers in and out of a wheelchair.

162. DOE was not able to meet A.D.'s needs by having staff trained in G-tube feeding and two-person transfers in and out of a wheelchair.

163. SRO Hague erred in finding that the hearing record shows that the assigned school would have been able to meet the recommendation for an assistive technology device.

164. DOE did not prove or demonstrate that the assigned school would have been able to meet the recommendation for an assistive technology device.

165. SRO Hague erred in finding that when Plaintiffs decided to place A.D. at iBRAIN for the 2020-21 school year, they were unaware of any of the concerns raised on appeal.

166. SRO Hague erred in finding that Plaintiffs' challenge to the May 2020 IEP was not a prospective challenge to the school's ability to implement the May 2020 IEP.

167. SRO Hague erred in finding that there was no denial of FAPE based on Plaintiffs' assertions.

168. SRO Hague erred in not determining whether Plaintiff met her burden in demonstrating that iBRAIN was an appropriate unilateral placement, or whether Plaintiffs' conduct was such that any award would be subject to equitable considerations.

169. SRO Hague erred in finding that the sole issue found by the IHO to be a denial of FAPE was outside the scope of the hearing, and the only conclusion can be that the student was offered a FAPE for the 2020-21 school year.

170. A.D. was not offered a FAPE for the 2020-2021 extended school year as the May 2020 IEP program placement was at all times unavailable to the Student.

171. In SRO Decision No. 21-143, SRO Hague erroneously failed to affirm IHO Tillyard's findings that DOE denied A.D. a FAPE for the 2020-2021 extended school year, that

Plaintiffs' unilateral placement of A.D. at iBRAIN for the 2020-2021 extended school year was appropriate and that equities favored Plaintiffs' request for tuition reimbursement/direct payment for A.D.'s placement at iBRAIN as well as for special transportation costs.

172. Plaintiffs have neither waived nor abandoned any claims or arguments under the IDEA or state law.

## AS AND FOR A FIRST CAUSE OF ACTION

### *Erroneous Aspects of SRO Decision Should Be Reversed*

173. Plaintiffs reiterate, repeat, and reaffirm each allegation set forth above as if more fully set forth herein.

174. SRO Hauge failed to discharge her duties properly as required by the IDEA, the federal regulations promulgated thereunder, the New York State Education Law, and the Regulations of the New York Commissioner of Education.

175. SRO Decision 21-143 concerning the 2020-2021 extended school year for A.D. should be reversed for the reasons set forth above and herein.

176. SRO Hague erroneously found that IHO Tillyard erred by finding that DOE denied A.D. a FAPE based on a ground not alleged by Plaintiffs in their DPC, namely that DOE's assigned school was not wheelchair accessible.

177. IHO Tillyard correctly found that DOE denied A.D. a FAPE for the 2020-2021 extended school year, that iBRAIN was an appropriate unilateral placement for the 2020-2021 extended school year, and that equities favored the Plaintiffs' request for direct retrospective and prospective tuition reimbursement for the 2020-2021 extended school year including the cost of transportation.

178. SRO Hague improperly reversed IHO Tillyard's FOFD in IHO Case No. 196382.

179. SRO Hauge did not address IHO Tillyard's finding that iBRAIN was an appropriate unilateral placement.

180. SRO Hauge did not address IHO Tillyard's finding that equities favored Plaintiffs' request for tuition reimbursement.

181. Based on the preceding, Plaintiff' rights, and those of A.D., were violated under the IDEA, 20 U.S.C. § 1401, *et seq.,* the federal regulations promulgated thereunder, 34 C.F.R. Part 300, Article 89 of the New York State Education Law, and the Regulations of the Commissioner, Part 200.

182. Defendants' actions have caused Plaintiffs damages.

183. Plaintiffs are entitled to all appropriate relief under the IDEA, including the specific remedy of direct funding to A.D.'s private educational provider, iBRAIN, with ancillary and necessary fees, including attorneys' fees.

184. Plaintiffs are entitled to direct funding for tuition and related services under the IDEA for A.D.'s placement at iBRAIN during the 2020-2021 extended school year.

185. Plaintiffs are entitled to direct funding for tuition and related services under the IDEA for A.D.'s placement at iBRAIN during the 2020-2021 extended school year, for the reasons set forth above, including but not limited to the following: 1) Defendants failed to offer or provide A.D. with a FAPE; 2) iBRAIN was an appropriate unilateral placement in that, *inter alia,* A.D.'s educational program at iBRAIN was tailored to meet A.D.'s individual needs and A.D. made progress at iBRAIN during the 2020-2021 extended school year, and 3) Equities favor total direct funding for the Plaintiffs because DOE failed to offer or provide A.D. with a FAPE through no fault of the Plaintiffs, and the cost of iBRAIN during the 2020- 2021 extended school year was reasonable relative to the services that

A.D. received, as was the cost of transportation.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs respectfully request that the Court:

(a)    Conduct an independent, de novo, review of the administrative record;

(b)    Reverse and/or vacate SRO Decision No. 21-143 and otherwise affirm IHO Tillyard's FOFD in all respects;

(c)    Reverse and/or vacate SRO Decision No. 21-143 in its entirety and issue an Order finding that, based upon a review of the administrative record in this matter, DOE failed to provide A.D. a FAPE for the 2020-2021 extended school year, Plaintiffs' unilateral placement of A.D. at iBRAIN for the 2020-2021 extended school year was appropriate, and equities favor Plaintiffs' request for direct retrospective and prospective tuition reimbursement for the 2020-2021 extended school year including the cost of transportation.

(d)    Direct Defendants to directly fund any remaining costs of tuition and related services;

(e)    Declare Plaintiffs to be the substantially prevailing party for purposes of IDEA's fee-shifting provision;

(f)    Award Plaintiffs reasonable attorneys' fees, as part of their costs, as prevailing parties in the underlying Administrative Action brought under the IDEA. 20 U.S.C. § 1415(i)(3)(B)(I) and 34 C.F.R. § 300.517(a)(l)(i);

(g)    Direct Defendants to pay for the costs and expenses of maintaining the administrative action before the IHO and the SRO pursuant to 20 U.S.C. § 1415;

(h)    Grant Plaintiffs leave to submit a statutory fee application;

(i)     Direct Defendants to pay for the costs and expenses of bringing and maintaining

        the instant federal action, including reasonable attorneys' fees; and

(j)     Grant Plaintiffs' such other, further, and different relief as to this Court may seem

        just, proper, and equitable.

Dated:  November 30, 2021
        New York, New York

                                        Respectfully Submitted,
                                        Brain Injury Rights Group, Ltd.
                                        *Attorneys for Plaintiffs*


                                By:  _____/S/_____
                                        Rory J. Bellantoni, Esq. (RB 2901)
                                        300 East 95th Street, Suite 130
                                        New York, NY 10128
                                        (646) 850-5035