UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ONANEY POLANCO,

                    Plaintiff,

      - against -

MEISHA PORTER, ET AL.,

                  Defendants.

21-cv-10176 (JGK)

MEMORANDUM OPINION
AND ORDER

JOHN G. KOELTL, District Judge:

    The plaintiff, Onaney Polanco, brings this suit on behalf of her minor son, A.D., alleging that the defendants, Meisha Porter and the New York City Department of Education ("DOE"), violated the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 et seq. The plaintiff is appealing an order of the State Review Office ("SRO") that declined to award the plaintiff a tuition reimbursement for her unilateral placement of A.D. at the International Institute of the Brain ("iBRAIN") for the 2020-2021 school year. The SRO's decision reversed the decision of an Impartial Hearing Officer ("IHO") which had granted reimbursement to the plaintiff. The parties have cross-moved for summary judgment pursuant to Federal Rule of Civil Procedure 56. For the following reasons, the plaintiff's motion for summary judgment is **denied**, and the defendants' motion for summary judgment is **granted**.

## I.

The following facts are based on the parties' Local Civil Rule 56.1 statements and the administrative record in this case and are undisputed unless otherwise noted. See Plaintiff's Rule 56.1 Statement, ECF No. 24 ("Pl.'s 56.1"); Defendants' Rule 56.1 Counterstatement, ECF No. 32 ("Defs.' 56.1"); Certified Record, ECF No. 20 ("Record").

The plaintiff, Polanco, is the parent of A.D., her minor son. Pl.'s 56.1 ¶¶ 1-2. At the beginning of the 2020-2021 school year, A.D. was nine years old. Id. ¶ 2. A.D. has been diagnosed with Pelizaeus-Merzbacher disease, a "brain-based disorder." Id. ¶ 3. Because of his disability, A.D. is "non-ambulatory, minimally verbal, has minor vision impairment," "is fully dependent on a G-tube for feeding," "uses a wheelchair," and "requires two person transfers for all mobility." Id. ¶ 4. A.D. "suffers severe impairments in the areas of cognition, language, memory, attention, reasoning, and abstract thinking." Id. ¶ 5. Because A.D. is a disabled student and a resident of New York City, the DOE is "obligated to provide him with a Free Appropriate Public Education ('FAPE')" for "every school year." Id. ¶ 8.

On May 26, 2020, the Committee on Special Education ("CSE") convened to develop an Individualized Education Plan ("IEP") for

A.D. for the 2020-2021 school year. Id. ¶ 9. The plaintiff attended this meeting. Defs.' 56.1 ¶ 10.

On June 23, 2020, the CSE sent the plaintiff a finalized IEP. Pl.'s 56.1 ¶ 11. The IEP created by the CSE recommended for A.D.: "a twelve-month school year; a special classroom with a staffing ratio of 6:1+1; a specialized school (District 75); a full-time 1:1 paraprofessional for ambulation, feeding, and safety; a 1:1 transportation paraprofessional; assistive technology ('AT') devices and services; related services of occupational therapy ('OT'), physical therapy ('PT'), and speech/language therapy ('SLT') five times a week in 60-minute sessions . . . per week; daily school nurse services for G-tube feeding and group Parent Counseling and Training ('PCAT') once a month for 60 minutes; two-person lift training and G-tube training; special transportation with a 1:1 paraprofessional, limited travel time, air conditioning, a life bus, and a wheelchair." Id. ¶ 12. The IEP also classified A.D. as a student with "Multiple Disabilities." Id. ¶ 6. The IEP also clarified specifically that A.D. uses a wheelchair. Id. ¶ 13.

On June 26, 2020, the plaintiff's "Parent Advocate" sent a ten day notice to the CSE informing the CSE that the plaintiff intended to enroll A.D. at iBRAIN for the 2020-2021 school year.

R. at 1147.[1] One day later, on June 27, 2020, the CSE sent a
School Location Letter ("SLL") to the plaintiff, providing that
A.D. be placed at The Locke School of Arts and Engineering in
Manhattan ("Placement School"). R. at 935; see also Pl.'s 56.1
¶¶ 11, 14.[2]

On July 1, 2020, the plaintiff enrolled A.D. at iBRAIN, a
private, "highly specialized education program for students with
brain injuries and brain-based disorders." Pl.'s 56.1 ¶ 18. A.D.
has attended iBRAIN since July 2018. Id. ¶ 19. At iBRAIN, A.D.
received: "education in a 6:1:1 special class; related services
of OT, PT, and SLT in 60-minute sessions, five times each per
week; music therapy in individual sessions twice a week for 60-
minutes (2x60), and one group session for 60 minutes per week
(1x60); PCAT once per month in 60-minute sessions; a 1:1
paraprofessional and 1:1 nurse; assistive technology devices and
services; and adaptive seating." Id. ¶ 20.

---

[1] The plaintiff claims in her 56.1 statement that the ten
day notice was sent on July 26, 2020, and the defendants do not
dispute this. Defs.' 56.1 ¶ 17. However, the administrative
record includes the notice dated June 26, 2020. R. at 1147. The
defendants' Rule 56.1 Statement also makes it clear that the
letter was sent on June 26, 2020. See Defs.' 56.1 ¶¶ 40-41.
[2] The plaintiff claims in her 56.1 statement that the School
Location Letter was sent on June 26, 2020, and the defendants do
not dispute this. Id. ¶ 11. However, the administrative record
includes the letter, and shows that the letter is dated June 27,
2020. R. at 935.

On July 6, 2020, the plaintiff filed a Due Process
Complaint ("DPC") asserting that the DOE failed to offer A.D. a
FAPE for the 2020-2021 school year, and requesting that the DOE
fund A.D.'s placement at iBRAIN, "including tuition, related
services, and transportation," for the 2020-2021 school year.
Id. ¶ 23. On January 27, 2021, a hearing commenced on the
matter, which concluded on March 19, 2021, "after nine total
days of proceedings." Id. ¶ 24.

On May 22, 2021, IHO Tillyard issued a Findings of Fact and
Decision ("FOFD"), finding that: "(1) the [d]efendants failed to
offer A.D. a FAPE for the 2020-2021 school year, (2) the
unilateral placement of iBRAIN was appropriate, and (3)
equitable considerations weighed in favor of the Parents." Id.
¶ 25. The IHO found that the Placement School "could not meet
[A.D.'s] needs as set out by the May 2020 IEP," id. ¶ 26,
because the IEP "indicates that [A.D.] uses a wheelchair and
needs an accessible school building," but "the record shows that
the Placement [School] building was only wheelchair accessible
at the entrances," id. ¶ 16. The IHO also concluded that the
plaintiff "had met her burden in proving that iBRAIN was an
appropriate [private] placement," and that "on balance,
equitable considerations support [the plaintiff's] claim for
payment of [A.D.'s] expenses for the 2020-2021 school year." Id.

¶¶ 27-28. The IHO therefore ordered the defendants to pay the costs of A.D.'s attendance at iBRAIN.

On June 1, 2021, the defendants submitted a "Request for Review" of the IHO's decision to State Review Officer ("SRO") Carol H. Hague. Id. ¶¶ 32-33. On July 30, 2021, SRO Hague reversed the IHO's decision and found that the DOE offered A.D. a FAPE for the 2020-2021 school year. Id. ¶ 33. The SRO found that the lack of wheelchair accessibility at the Placement School was not mentioned plaintiff's DPC before the IHO, and therefore "the issue of wheelchair accessibility was not properly raised within the due process complaint notice, and as such was beyond the scope of the impartial hearing." R. at 17. The SRO noted that "the subject of wheelchair accessibility was first addressed during the impartial hearing as part of the parent's attorney's cross-examination of the district witness," based on "one question." Id. The SRO concluded that "finding a denial of FAPE based on" "the one-question line of inquiry by parent's counsel during a nine day impartial hearing . . . is nothing short of the proverbial 'sandbag' courts counsel against." Id. Because the SRO found that A.D. was offered a FAPE, the SRO declined to consider whether the plaintiff had met her burden to demonstrate that iBRAIN was an appropriate placement and that equitable considerations were in the plaintiff's favor. Pl.'s 56.1 ¶ 35.

6

The plaintiff has moved for summary judgment seeking review
of the SRO's reversal of the IHO's FOFD. The plaintiff seeks to
uphold the IHO's decision that the defendants pay the costs of
A.D.'s attendance at iBRAIN, or in the alternative, a remand to
the IHO for further administrative proceedings. The defendants
have cross-moved for summary judgment, seeking to uphold the
SRO's decision that A.D. was provided a FAPE for the 2020-2021
school year.

## II.

"Under the IDEA, states receiving federal funds are
required to provide all children with disabilities a free
appropriate public education." Gagliardo v. Arlington Cent. Sch.
Dist., 489 F.3d 105, 107 (2d Cir. 2007); see also 20 U.S.C. §
1412(a)(1)(A).[3] A FAPE must provide "special education and
related services tailored to meet the unique needs of a
particular child, and be reasonably calculated to enable the
child to receive educational benefits." Walczak v. Florida Union
Free Sch. Dist., 142 F.3d 119, 122 (2d Cir. 1998). Because the
IDEA expresses a "strong preference for children with
disabilities to be educated, to the maximum extent appropriate,
together with their non-disabled peers, special education and

---

[3] Unless otherwise noted, this Memorandum Opinion and Order
omits all internal alterations, citations, footnotes, and
quotation marks in quoted text.

related services must be provided in the least restrictive setting consistent with a child's needs." Id.; see also Grim v. Rhinebeck Cent. Sch. Dist., 346 F.3d 377, 379 (2d Cir. 2003).

These services are administered through a written IEP, which must be updated at least annually. Walczak, 142 F.3d at 122; see also 20 U.S.C. § 1414(d). In New York, the responsibility for developing an appropriate IEP for a child is assigned to a local CSE. Walczak, 142 F.3d at 123.

Parents in New York who wish to challenge their child's IEP as insufficient under the IDEA may request an impartial due process hearing before an IHO appointed by the local board of education. Id. at 122-23 (citing 20 U.S.C. § 1415(f) and N.Y. Educ. Law § 4404(1)). A party may appeal the decision of the IHO to an SRO, and the SRO's decision may be challenged in either state or federal court. Id. (citing 20 U.S.C. § 1415(g), 1415(i)(2)(A) and N.Y. Educ. Law 4404(2)); see also Jennifer D. v. N.Y.C. Dep't of Educ., 550 F. Supp. 2d 420, 424 (S.D.N.Y. 2008).

Under the IDEA, a district court independently reviews the administrative record, along with any additional evidence presented by the parties, and must determine by a preponderance of the evidence whether the IDEA's provisions have been met.[4]

---

[4] Courts have noted that "summary judgment appears to be the most pragmatic procedural mechanism in the Federal Rules for

Grim, 346 F.3d at 380; see also Mrs. B v. Milford Bd. of Educ.,
103 F.3d 1114, 1120 (2d Cir. 1997). This independent review,
however, is "by no means an invitation to the courts to
substitute their own notions of sound educational policy for
those of the school authorities which they review." Bd. of Educ.
of Hendrick Hudson Cent. Sch. Dist. v. Rowley, 458 U.S. 176, 206
(1982). The Court of Appeals for the Second Circuit has
explained that "federal courts reviewing administrative
decisions must give 'due weight' to these proceedings, mindful
that the judiciary generally 'lack[s] the specialized knowledge
and experience necessary to resolve persistent and difficult
questions of educational policy.'" Gagliardo, 489 F.3d at 113
(quoting Rowley, 458 U.S. at 206, 208); see also Cerra v.
Pawling Cent. Sch. Dist., 427 F.3d 186, 192 (2d Cir. 2005).

Deference to the decision in the administrative record is
particularly appropriate when the administrative officers'
review has been thorough and careful, and when the Court's
decision is based solely on the administrative record. See

---

resolving IDEA actions," but that "[t]he inquiry . . . is not
directed to discerning whether there are disputed issues of
fact, but rather, whether the administrative record, together
with any additional evidence, establishes that there has been
compliance with IDEA's processes and that the child's
educational needs have been appropriately addressed." Wall v.
Mattituck-Cutchogue Sch. Dist., 945 F. Supp. 501, 508 (E.D.N.Y.
1996); see also Antonaccio v. Bd. of Educ. of Arlington Cent.
Sch. Dist., 281 F. Supp. 2d 710, 714 (S.D.N.Y. 2003).

Walczak, 142 F.3d at 129; Frank G. v. Bd. of Educ., 459 F.3d
356, 367 (2d Cir. 2006). Where the findings of the IHO and SRO
conflict, the findings of the IHO "may be afforded diminished
weight." A.C. ex rel. M.C. v. Bd. of Educ. of the Chappaqua
Cent. Sch. Dist., 553 F.3d 165, 171 (2d Cir. 2009). Accordingly,
the Court "defer[s] to the final decision of the state
authorities, even where the reviewing authority disagrees with
the hearing officer." Id. at 171.

### III.

Parents dissatisfied with a district's recommended school
placement for their child may unilaterally place their child in
a private school and seek tuition reimbursement from the
district. See 20 U.S.C. § 1412(a)(10)(C). However, parents who
choose to place their children in a private school "during the
pendency of review proceedings, without the consent of state or
local school officials, do so at their own financial risk."
Florence Cnty. Sch. Dist. Four v. Carter, 510 U.S. 7, 15 (1993).
The Burlington/Carter test governs whether a district is
required to pay for the private program selected by the parent.
See T.M. ex rel. A.M. v. Cornwall Cent. Sch. Dist., 752 F.3d
145, 152 (2d Cir. 2014); see also Sch. Comm. of Burlington v.
Dep't of Educ. of Mass., 471 U.S. 359 (1985). Parents are
entitled to reimbursement if: (1) the school district's proposed
placement violated the IDEA, (2) the parents' alternative

private placement was appropriate, and (3) equitable considerations favor reimbursement. T.M., 752 F.3d at 152. The DOE bears the burden on the first prong of the test to establish that the student's IEP provided a FAPE. See M.W. ex rel. S.W. v. N.Y.C. Dep't of Educ., 725 F.3d 131, 135 (2d Cir. 2013). If the DOE fails to meet this burden, the parents then bear the burden to establish that the alternative private placement was appropriate and that the equities favor the parents. Id.

In the initial administrative proceeding, the IHO concluded that the Placement School did not provide A.D. with a FAPE because the building was allegedly inaccessible beyond its first floor entrances, and found in favor of the plaintiff on the appropriateness of placing A.D. at iBRAIN and on the balance of equities. R. at 39. On appeal, the SRO reversed the decision of the IHO, finding that the issue of accessibility had been waived because the plaintiff had not raised it in her DPC. Based on the administrative record, the SRO found that the DOE had not denied A.D. a FAPE for the 2020-2021 school year, and therefore did not find it necessary to reach the second and third prongs of the Burlington/Carter test. R. at 16-17, 19. Because the SRO concluded that the IEP was proper and that A.D. was offered a FAPE, the plaintiff bears the burden "of demonstrating that the [SRO] erred." M.H. v. N.Y.C. Dep't of Educ., 685 F.3d 217, 225 n.3 (2d Cir. 2012). Generally, "courts must defer to the

11

reasoned conclusions of the SRO as the final state administrative determination." Id. at 246.

The plaintiff argues that the SRO's reversal of the IHO is not entitled to deference because the SRO ignored "key evidence, such as the lack of accessibility of the [Placement School], fail[ed] to address obvious weaknesses and gaps, and ma[de] impermissible credibility assessments about the factual findings on class grouping, disability classification, and medical concerns about training." Pl.'s Memo., ECF No. 26, at 8. While it is true that inadequately reasoned SRO decisions may not merit deference, see Scott ex rel. C.S. v. N.Y.C. Dep't of Educ., 6 F. Supp. 3d 424, 441 (S.D.N.Y. 2014), the SRO's decision was not inadequately reasoned. An SRO decision may not merit deference if the SRO "(1) failed to carefully consider significant evidence; (2) failed to address obvious weaknesses and gaps in the evidence; (3) mischaracterized the testimony of . . . critical witnesses; and (4) made an impermissible credibility assessment." Id.

In this case, the SRO considered the issue of the Placement School's accessibility but found that the plaintiff had waived the issue because it was not raised in the DPC. Ordinarily, the IDEA provides for a "statutory 30-day resolution period once a due process complaint is filed" during which the DOE may remedy any alleged deficiencies in the IEP without penalty. R.E. v.

12

N.Y.C. Dep't of Educ., 694 F.3d 167, 187-88 (2d Cir. 2012); see
also 20 U.S.C. § 1415(f)(1)(B). "If, at the end of the
resolution period, the parents feel their concerns have not been
adequately addressed and the amended IEP still fails to provide
a FAPE, they can continue with the due process proceeding and
seek reimbursement." R.E., 694 F.3d at 188. The DPC must include
"all of the alleged deficiencies in the IEP . . . in order for
the resolution period to function." Id. at 187 n.4. "Substantive
amendments to the parents' claims are not permitted" where they
were not first raised in the DPC because this would allow
parents to "sandbag the school district" with problems that
could have been addressed during the 30-day resolution period.
Id.

     In this case, the DPC "does not make any allegations or
references to the assigned public school being inaccessible for
students with wheelchairs." R. at 16. Instead, as the SRO found,
the issue of wheelchair accessibility "was first addressed
during the impartial hearing as part of the parent's attorney's
cross-examination of the district witness," and involved only a
short answer to a single question posed to the witness. R. at
17. The witness was asked: "[W]ith respect to the structure . .
. could you tell us whether or not that building is handicap[]
accessible?" to which the witness responded: "To my knowledge,
it is not an accessible building besides the entrances." Id. The

"party requesting [a] due process hearing shall not be allowed
to raise issues at [the] hearing that were not raised in [the]
due process complaint unless [the] other party agrees." B.P. v.
N.Y.C. Dep't of Educ., 634 F. App'x 845, 849 (2d Cir. 2015)
(citing 20 U.S.C. § 1415(f)(3)(B)). "The scope of the inquiry of
the IHO, and therefore the SRO and this Court, is limited to
matters either raised in the [p]laintiffs' impartial hearing
request or agreed to by [the] [d]efendant." B.P. v. N.Y.C. Dep't
of Educ., 841 F. Supp. 2d 605, 611 (E.D.N.Y. 2012). The SRO was
therefore correct in concluding that the IHO, by considering the
plaintiff's arguments about the Placement School's wheelchair
inaccessibility, went beyond the scope of the impartial hearing.
Although the plaintiff's attorney raised the issue of
accessibility during its cross-examination of the district's
witness, the one-line inquiry into the accessibility of the
Placement School, without providing the witness the opportunity
to elaborate further on the Placement School's accessibility,
raises the obvious concern of "sandbag[ging]" that the 30-day
resolution period, and the requirement to raise deficiencies in
the DPC, is designed to avoid. R.E., 694 F.3d at 187 n.4.

The plaintiff argues that the issue of wheelchair
inaccessibility was not waived because it was raised in the DPC.
However, the plaintiff only points to general statements in the
DPC that the district failed to implement the IEP by "not

offering a seat to [A.D.] in a classroom that could implement
the IEP," and that the district provided "a placement that does
not provide the mandated program." R. at 16. These statements,
which did not specifically address the issue of the Placement
School's alleged wheelchair inaccessibility, could not have put
the school district on reasonable notice of that accessibility
issue and did not give the school district an opportunity to
cure that defect with the placement. Accordingly, the plaintiff
did not raise properly the issue of wheelchair accessibility in
the DPC and therefore has waived that issue.[5] Moreover,
"challenges to a school district's proposed placement school
must be evaluated prospectively" and "cannot be based on mere
speculation." M.O. v. N.Y.C. Dep't of Educ., 793 F.3d 236, 244
(2d Cir. 2015). The SRO found that the plaintiff's general
statements raised only "general challenges and, accordingly, did
not raise any prospective, non-speculative challenges" to the
proposed placement. R. at 17. Because the plaintiff's statements
do not highlight any specific reasons why the Placement School
could not have implemented the IEP, but instead only speculates
as to the its inability to do so, the SRO concluded correctly

---

[5] The plaintiff also did not raise the issue of 1:1 nursing
services in the DPC. Thus, for the same reasons that the
plaintiff has waived her accessibility challenge, the plaintiff
has also waived the issue of nursing services.

that the plaintiff's statements did not raise properly any prospective challenges to the proposed placement.

Because the issue of wheelchair accessibility was limited to a single question on cross examination, the school district was never provided the opportunity to develop why the Placement School was appropriate to implement the IEP for A.D., to make changes in the selected school placement, or indeed to change the selected school entirely. What facilities were available at the Placement School was never developed nor did the record reflect whether A.D.'s classes were limited to the first floor or what accommodations were contemplated for a student who plainly used a wheelchair and whose IEP provided for a wheelchair.[6] The 30-day resolution period is intended specifically to allow the school district to cure any defects identified with its proposed placement. Allowing the plaintiff to circumvent this process by not raising the challenge in the DPC amounts to "sandbag[ging]" the school district with an issue that it otherwise may have been able to cure if the issue had been raised earlier. R.E., 694 F.3d at 187 n.4.

---

[6] Indeed, the district's placement witness, who "had 3 years of experience as IEP Co-ordinator at the [Placement School]" and who the IHO specifically found to be knowledgeable and credible, testified during the hearing that "[the Placement School] would be able to provide those services [required in the IEP]." R. at 30-32.

The plaintiff also argues that A.D. was denied a FAPE because A.D. should have been classified as having a "traumatic brain injury" instead of being classified as having "multiple disabilities." However, well-reasoned decisions in other circuits have clarified that a student's disability classification is generally immaterial in determining whether a FAPE was provided if the IEP otherwise sufficiently met the needs of the disabled student. See, e.g., Fort Osage R-1 Sch. Dist. v. Sims ex rel. B.S., 641 F.3d 996, 1004 (8th Cir. 2011) ("[T]he particular disability diagnosis affixed to a child in an IEP will, in many cases, be substantively immaterial because the IEP will be tailored to the child's specific needs."); Heather S. v. Wisconsin, 125 F.3d 1045, 1055 (7th Cir. 1997) ("[W]hether [the student] was described as cognitively disabled, other health impaired, or learning disabled is all beside the point . . . The IDEA charges the school with developing an appropriate education, not with coming up with a proper label with which to describe [the student's] multiple disabilities."). For the same reasons, the SRO found this argument unavailing because "the IDEA's strong preference for identifying the student's specific needs and addressing those needs generally outweighs relying on a particular disability diagnosis." R. at 20.

The plaintiff raised several other issues before the SRO that the SRO determined were inadequate challenges to the

proposed placement. First, the plaintiff argues that the Placement School did not group A.D. with other students with similar needs who were similarly disabled. However, the plaintiff's challenge to A.D.'s class grouping fails because it does not present a prospective challenge to the IEP but is instead merely speculative. M.O., 793 F.3d at 244. The plaintiff only speculates as to whether the proposed class grouping would interfere with A.D.'s ability to receive a proper education at the Placement School. Because the plaintiff did not show how the proposed class grouping could prospectively have denied A.D. a FAPE, the SRO was correct to conclude that this challenge was insufficient. See Walczak, 142 F.3d at 134 (finding that an IEP was not deficient even though it grouped a student "in a class with children whose intellectual, social, and behavioral needs were incompatible with her own" because it did not affect the student's ability to "continue making academic progress").

Along the same lines, the SRO concluded that the plaintiff's other arguments were insufficient because the plaintiff raised issues that only speculated as to the Placement School's inability to implement the IEP. For example, the plaintiff argued that A.D. was denied a FAPE because the assigned school nurse was not trained in G-tube feeding and because the staff at the Placement School could not conduct two-person transfers. However, the IEP specifically provides that

staff at the Placement School should be trained to conduct two-person transfers and that nurses should be trained for G-tube feeding. See R. at 871. Because the IEP provided specifically that the staff at the Placement School would be trained to address these issues, any further challenge that such training would be insufficient only speculates, impermissibly, as to the Placement School's ability to implement the IEP. See R.E., 694 F.3d at 195 ("Speculation that the school district will not adequately adhere to the IEP is not an appropriate basis for unilateral placement.").

The plaintiff, on this motion for summary judgment, also raises for the first time a procedural challenge that the administrative proceedings were not conducted in a timely fashion, which the plaintiff argues "amounts to a denial of [a] FAPE, and entitles [the plaintiff] to pendency payments from the close of the statutory 45-day period until a hearing is finally [held]." Pl.'s Memo. at 14. New York's regulations implementing the IDEA require an IHO to render a decision "not later than 45 days from the day after" various periods for mediation. N.Y. Comp. Codes R. & Regs. tit. 8, § 200.5(j)(5) (2021). In this case, the IHO issued a final decision over ten months after the plaintiff filed the DPC. And where extensions of time have been granted, "the decision must be rendered and mailed no later than 14 days from the date the impartial hearing officer closes the

19

record." Id. The defendants respond that the plaintiff has
waived her procedural challenge because the plaintiff did not
raise this issue in the administrative proceedings before either
the IHO or the SRO. See Garro v. Conn., 23 F.3d 734, 737 (2d
Cir. 1994) ("Before seeking judicial review in the federal
courts, persons claiming to be aggrieved by procedural
violations of the IDEA must first exhaust their administrative
remedies."). In any event, the plaintiff's procedural challenge
is meritless because "[a] child's right to a FAPE is not
prejudiced by delay where a court finds that the challenged IEP
was adequate." M.O. v. N.Y.C. Dep't of Educ., 996 F. Supp. 2d
269, 272 (S.D.N.Y. 2014); see also Grim, 346 F.3d at 382
("Because the [IEPs] were both appropriate and available, any
delay in resolving the parents' challenges to them cannot have
prejudiced [the student's] education."). In this case, the
school district offered A.D. an adequate IEP, and therefore any
delay did not deny A.D. a FAPE. See Grim, 346 F.3d at 381-82.

The SRO's reversal of the IHO's initial determination that
the plaintiff was denied a FAPE was therefore well-reasoned and
correct, and entitled to deference as the "final decision of the
state authorities." See M.H., 685 F.3d at 241. The plaintiff has
not shown that A.D. was denied a FAPE for the 2020-2021 school
year. Because A.D. has not been denied a FAPE, it is unnecessary
to reach the latter prongs of the analysis: whether the

alternative private placement was appropriate, and whether
equitable considerations favor reimbursement. Accordingly, the
defendants' motion for summary judgment is **granted**, and the
plaintiff's motion for summary judgment is **denied**.[7]

## CONCLUSION

The Court has considered all the arguments of the parties.
To the extent not specifically addressed above, the arguments
are either moot or without merit. For the foregoing reasons, the
plaintiff's motion for summary judgment is **denied**, and the
defendants' motion for summary judgment is **granted**. The Clerk is
directed to close all pending motions and to close this case.

**SO ORDERED.**

**Dated:**     **New York, New York**
              **February 27, 2023**

                                        John G. Koeltl
                                   **United States District Judge**

---

[7] The plaintiff, in her moving papers, requests "[i]n the
alternative" that this case be remanded to the IHO "for further
hearings and presentation of evidentiary evidence." Pl.'s Memo.
at 20. However, at oral argument, the plaintiff conceded that
remand would no longer be appropriate. In any event, remand is
ordinarily appropriate only when a district court "needs further
clarification or does not have sufficient guidance from the
administrative agencies." T.L. v. N.Y.C. Dep't of Educ., 938 F.
Supp. 2d 417, 436 (E.D.N.Y. 2013). In this case, it is not clear
what purpose remand would serve because there is no need for
further clarification or guidance from either the IHO or the
SRO.